Filed 4/29/14  P. v. Sumi CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　v.<br><br>DEBBIE PACHECO SUMI,<br><br>　　　Defendant and Appellant. | D063418<br><br><br><br>(Super. Ct. No. SCN281314) |

APPEAL from a judgment of the Superior Court of San Diego County, Runston G. Maino, Judge.  Affirmed.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, Charles C. Ragland, and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

Debbie Pacheco Sumi appeals the judgment sentencing her to prison for 10 years after a jury found her guilty of killing three people as a result of drunk driving. Sumi contends the trial court erroneously admitted a statement she made after release from custody that confirmed a prior statement she made while in custody and without having been given the warnings required by *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*). We affirm.

I.

FACTUAL BACKGROUND

Sumi and Larry Alvarez were traveling at approximately 65 miles per hour in a Jeep Cherokee when it crashed into another vehicle parked on the shoulder of a freeway. As a result of the crash, Sumi was thrown from the Jeep onto the freeway, Alvarez was thrust partially through the windshield of the Jeep and killed, and two passengers from the parked vehicle were struck and killed. Sumi was transported to a hospital where she was diagnosed with acute alcohol intoxication, blunt chest and abdominal trauma, a broken rib, and several broken vertebrae.

While Sumi was in the hospital, California Highway Patrol Sergeant Michael Bush and Officer Bill Ochoa contacted her as part of an investigation of the crash. Sumi was the main suspect, and Ochoa placed her under arrest, but neither officer administered *Miranda* warnings.[1] Bush then questioned Sumi about the crash. Sumi stated she was

---

[1] Under *Miranda*, *supra*, 384 U.S. at page 444, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure

2

driving the Jeep and Alvarez was in the passenger seat. After she learned Alvarez died in the crash, however, Sumi told Bush and Ochoa that Alvarez was driving, and explained that she initially said she was driving because she did not want Alvarez to get in trouble. Bush and Ochoa released Sumi from custody after questioning her, apparently so that the state would not have to pay for her hospitalization. They also gave Sumi a business card with a telephone number to call if she remembered additional details about the crash.

Later that day, Sumi telephoned the California Highway Patrol and spoke to Sergeant William Payson. Sumi told Payson she was in the hospital after a car accident and "needed to know the circumstances surrounding the accident." Payson asked her what she knew about the accident. Sumi responded that she and Alvarez went to two bars and had drinks, and that she drove to both bars but was uncertain about who was driving after they left the second bar. Payson then reminded Sumi that earlier at the hospital she had told Bush she was driving, and then changed her story to say Alvarez was driving only after she learned he was dead. Sumi admitted that she had made the earlier statement to Bush, but explained that she had done so to protect Alvarez because he had a prior felony conviction. When Payson continued to press Sumi on the point, she replied that "maybe" she was driving but "just couldn't be sure." Sumi "sounded coherent to [Payson] on the telephone."

---

the privilege against self-incrimination. . . . Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed."

3

## II.

## PROCEDURAL BACKGROUND

The People charged Sumi with three counts of gross vehicular manslaughter while intoxicated. (Pen. Code, § 191.5, subd. (a).)

Before trial commenced, Sumi objected to the admissibility of the statements she made to Bush and Payson about who was driving the Jeep at the time of the crash. At a hearing on the issue, the parties called no witnesses and agreed Sumi made the statements under the circumstances recounted in section I., *ante*. Based on the agreed facts, Sumi argued both statements should be excluded under *Miranda*. The People conceded the statement to Bush was inadmissible, but argued the statement to Payson was admissible. The trial court ruled that *Miranda* prohibited admission of Sumi's statement to Bush but not her statement to Payson.

A jury found Payson guilty on all counts, and the trial court sentenced her to an aggregate prison term of 10 years.

## III.

## DISCUSSION

Sumi contends the trial court committed prejudicial error by admitting her statement to Payson that she was driving the Jeep when it crashed into the other vehicle. Specifically, Sumi argues that because her earlier statement to Bush that she was the driver was obtained in violation of *Miranda*, her subsequent confirmation of that statement to Payson was tainted by the violation and consequently inadmissible. We disagree.

4

An appellate court applies a de novo standard of review to a trial court's ruling on a motion to exclude a statement under *Miranda* where, as here, the trial court applied the law to undisputed facts. (*People v. Waidla* (2000) 22 Cal.4th 690, 730; *People v. Riva* (2003) 112 Cal.App.4th 981, 988.) "Although we review the record and independently decide whether the challenged statements were obtained in violation of *Miranda* . . . , we may ' "give great weight to the considered conclusions" ' of the trial court." (*People v. Nelson* (2012) 53 Cal.4th 367, 380.) Here, the trial court ruled Sumi's statement to Bush that she was driving the Jeep at the time of the crash was inadmissible under *Miranda*; but her later statement to Payson confirming the earlier statement to Bush was admissible because Sumi was not in custody when "she voluntarily called [Payson] and voluntarily made [the] statement to [him]." As we shall explain, the court ruled correctly.

The *Miranda* exclusionary rule protects the Fifth Amendment right of a person not to "be compelled in any criminal case to be a witness against himself." (U.S. Const., 5th Amend.; see *Malloy v. Hogan* (1964) 378 U.S. 1, 6 [5th Amend. privilege against self-incrimination applies to states through 14th Amend.].) "[T]he Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." (*Miranda*, *supra*, 384 U.S. at p. 467.) "Failure to administer *Miranda* warnings creates a presumption of compulsion. Consequently, unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under *Miranda*." (*Oregon v. Elstad* (1985) 470 U.S. 298, 307 (*Elstad*).)

5

Here, the parties agree that Sumi was under arrest but received no *Miranda* warnings before Bush questioned her at the hospital and she admitted driving the Jeep when it crashed into the other vehicle. "When police ask questions of a suspect in custody without administering the required warnings, *Miranda* dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the State's case in chief." (*Elstad*, *supra*, 470 U.S. at p. 317; see *Miranda*, *supra*, 384 U.S. at p. 444.) Hence, the trial court properly excluded Sumi's statement to Bush.

The inadmissibility of Sumi's statement to Bush did not necessarily render her later confirmation of that statement to Payson inadmissible, however. "[T]he *Miranda* presumption, though irrebuttable for purposes of the prosecution's case in chief, does not require that the statements and their fruits be discarded as inherently tainted." (*Elstad*, *supra*, 470 U.S. at p. 307.) "Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made." (*Id.* at p. 309.) In other words, "[e]ven when a first statement is taken in the absence of proper advisements and is *incriminating*, so long as the first statement was voluntary a subsequent voluntary confession ordinarily is not tainted simply because it was procured after a *Miranda* violation. . . . 'The relevant inquiry is whether, in fact, the second statement was also voluntarily made.' " (*People v. Williams* (2010) 49 Cal.4th 405, 448 (*Williams*).) Thus, we "must determine (1) whether the statements obtained in violation of *Miranda* were otherwise voluntary; and (2) whether, under the totality of the circumstances, defendant's subsequent statements also were voluntarily made. If both

6

tests are met and the subsequent statements were not themselves directly in response to further non-*Miranda* interrogation, they are admissible against the defendant." (*People v. Torres* (1989) 213 Cal.App.3d 1248, 1255 (*Torres*).)

Here, the record indicates Sumi's responses to Bush's questions were obtained in violation of *Miranda* but were otherwise voluntary. Although Ochoa had arrested Sumi before she told Bush she was driving the Jeep at the time of the crash, she was not confined at a police station but was in a hospital being attended by medical personnel. The presence of two law enforcement officers did not convert the hospital into "an interrogation environment . . . created for no purpose other than to subjugate the individual to the will of his examiner." (*Miranda*, *supra*, 384 U.S. at p. 457; see *People v. Mosley* (1999) 73 Cal.App.4th 1081, 1090 [noting hospital was not "a police-dominated atmosphere" where "incommunicado interrogation" of suspects occurred].) Sumi introduced no evidence that Bush or Ochoa beat, threatened, intimidated, tricked, or otherwise pressured her physically or psychologically. On this record, there is no suggestion that the questioning of Sumi involved "coercion of a confession by physical violence or other deliberate means calculated to break the suspect's will." (*Elstad*, *supra*, 470 U.S. at p. 312.) We thus conclude Sumi's statement to Bush that she was driving the Jeep when it crashed into the other vehicle was voluntary.

We also conclude Sumi's subsequent statement confirming that statement to Payson was voluntary and, therefore, admissible. "As an initial matter, the telephonic conversation did not take place under conditions constituting a custodial interrogation or its functional equivalent." (*People v. Terrell* (2006) 141 Cal.App.4th 1371, 1386

7

(*Terrell*).) When Sumi telephoned Payson, she had been released from custody and was in her hospital room. She was not physically restrained by any law enforcement officer, and no officer was there asking her questions. Rather, Sumi freely initiated the telephone call to Payson in an effort to obtain more information about the crash; and in the course of the call, she seemed coherent and admitted having told Bush she was driving the Jeep when Payson reminded her of her prior statement. Such " ' "an intervening independent act by the defendant" ' " breaks the causal chain between the two confessions and dissipates any taint the first might have left on the second. (*People v. McWhorter* (2009) 47 Cal.4th 318, 360 (*McWhorter*); accord, *Terrell*, at p. 1386.) Since "the totality of the circumstances" indicates Sumi's statements to Payson about who was driving the Jeep at the time of the crash were "the product of [her] free will and rational intellect," the trial court properly admitted them. (*Torres*, *supra*, 213 Cal.App.3d at pp. 1255, 1256.)

Sumi contends her statements to Payson were not admissible because she never received *Miranda* warnings that would have " 'purge[d] the taint' from the earlier improper questioning" by Bush. We disagree, for two reasons. First, no *Miranda* warnings were required when Sumi talked to Payson over the telephone because she was not then in custody or otherwise restrained by law enforcement. *Miranda* warnings "need be administered only after the person is taken into 'custody' or his freedom has otherwise been significantly restrained." (*Elstad*, *supra*, 470 U.S. at p. 309.) Second, although the high court held that "subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement *ordinarily should suffice* to remove the conditions that precluded admission of the earlier statement" (*Elstad*, at p. 314, italics

8

added), "the court did *not* hold that a *Miranda* advisement and waiver are *prerequisites* for finding [subsequent] statements to be voluntary" (*Torres*, *supra*, 213 Cal.App.3d at p. 1255, italics added). "Rather, the trier of fact must examine the totality of the surrounding circumstances and the entire course of police conduct in evaluating the voluntariness of statements which follow a noncoercive *Miranda* violation." (*Torres*, at p. 1255.) As we have explained, the record here shows that Sumi's statements to Payson about who was driving the Jeep when it crashed into the other vehicle were voluntary and thus admissible.

Sumi also argues her statements to Payson should have been excluded because "she did not make a new, independent confession," and the effect of admitting those statements was simply to introduce the original confession Bush obtained in violation of *Miranda*. We reject Sumi's contention, which, if adopted, would effectively preclude admission of a subsequent confession that references a prior confession whenever the prior confession was obtained in violation of *Miranda*. Once a suspect has "let the cat out of the bag by confessing, . . . he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first." (*United States v. Bayer* (1947) 331 U.S. 532, 540.) But " ' "no court has ever 'gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed.' " ' " (*McWhorter*, *supra*, 47 Cal.4th at p. 359, quoting *Bayer*, at pp. 540-541.) Rather, recognizing that "little justification exists for permitting

9

the highly probative evidence of a voluntary confession to be irretrievably lost to the factfinder" when "neither the initial nor the subsequent admission is coerced" (*Elstad*, *supra*, 470 U.S. at p. 312), courts have held that after an initial confession is obtained in violation of *Miranda*, a subsequent confession not so obtained is admissible as long as the initial one was not actually coerced and the subsequent one was given voluntarily (see, e.g., *Elstad*, at p. 309; *Williams*, *supra*, 49 Cal.4th at p. 448; *Torres*, *supra*, 213 Cal.App.3d at p. 1255). As we have explained, that is the situation here.

Finally, the cases Sumi cites do not support her argument that her statements to Payson should have been excluded at trial. *Missouri v. Seibert* (2004) 542 U.S. 600, 604, condemned a deliberate police practice of taking a suspect into custody, not giving *Miranda* warnings, obtaining a confession, and then giving *Miranda* warnings and having the suspect repeat the confession. "Unlike *Seibert*, there is no evidence here that the officers were 'following a policy of disregarding the teaching of *Miranda*.' " (*People v. Scott* (2011) 52 Cal.4th 452, 478.) *People v. Neal* (2003) 31 Cal.4th 63, 68, held confessions were involuntary and inadmissible when police ignored the defendant's repeated requests for counsel; badgered him; and kept him in jail overnight without access to food, drink, or toilet facilities. No comparable abusive tactics by law enforcement were used in this case. *People v. Storm* (2002) 28 Cal.4th 1007, 1012-1013, considered whether a break in custody allowed police to recontact a suspect who had invoked his right to counsel while in custody, an issue not involved in this appeal. *Seibert*, *Neal*, and *Storm* are thus not on point. Other cases cited by Sumi actually support our conclusion that her statements to Payson were voluntary and properly

10

admitted at trial. (See *Terrell*, *supra*, 141 Cal.App.4th 1371; *Torres*, *supra*, 213 Cal.App.3d 1248.)

## DISPOSITION

The judgment is affirmed.


IRION, J.

WE CONCUR:


BENKE, Acting P. J.


AARON, J.